Good morning, your honors. I'm Tim Cullen. I represent Angela Moody on appeal. This case is primarily a legal issue about immunity. There's a quote from a Connecticut case called Strong Medicine. You don't often see the word absolute in the law. There are very few absolutes. But the trial court here applied absolute immunity to a hired gun expert witness, psychologist, in a defamation claim that was brought against the psychologist. You're relying on an Arkansas case, correct? Yes, your honor. You're relying on an old Arkansas case, I think was your point. Yes, yes. So that was the Johnson case. And that was what the trial court relied on. And that case is meaningfully distinguishable because Johnson, the testimony in Johnson that was alleged to be defamatory, was a lay witness. And he was somebody that on the stand was accused of a crime and he denied it and said basically you're defaming me. That was not an expert witness. And there's a meaningful distinction there. Immunity, the Supreme Court tells us in the Briscoe case, rests on the functional categories of the witnesses, not the status of the defendant. So there's a different functional category for a fact witness or a percipient witness was a new word I learned in this case. A percipient witness as opposed to an expert witness. Percipient witnesses don't have much choice about being involved in a case. They are compelled to because they happen to witness something. Same with the other people that get these various forms of immunity, including the judges and the lawyers and the other court officers. They are compelled to testify or they're compelled to be involved in the case. They are described as part of the integral function of the court. And that's why they deserve this high level of immunity is because we don't want to chill anything about their honest carrying out of their duties. Experts, however, are different. Experts are not compelled to be part of the case. They choose to be part of the case. They put themselves out there as willing to review matters and form opinions and testify about those things. They're higher guns. They are not integral to the case. Any expert could stand in for a party and opine about their expert opinions. There's nothing unique between that expert and the facts of the case like there is with a fact witness. So that's why we contend that Johnson is not good authority for this very broad proposition that the district court made that this expert witness was entitled to absolute immunity. So the distinction you're making is between a fact witness and an expert witness? Yes, Your Honor. Yes, and I've cited to a couple of scholarly articles that show a trend towards holding expert witnesses accountable for negligence or misstatements or defamation or things like that. But I also think there's powerful authority in Arkansas in the Martin, Chambers, and Fatak line of cases. All of those involved psychologists or psychiatrists. In those cases, those were appointed experts, I think at least two of them, I'm not sure Chambers was, who were appointed by the court to do something or other, to evaluate the parties or do something or other. In Fatak, the psychologist was appointed by the court to interview both of the parties to a contentious custody case and try to help them work through their inability to communicate with one another. The Arkansas Supreme Court in Fatak held that a court-appointed expert like that typically has immunity, at least quasi-judicial immunity. But under the facts in Fatak, that immunity was forfeited. And he was not entitled to summary judgment based on immunity because of how he exceeded the scope of his appointment. But this doesn't involve a court-appointed expert. Correct, Your Honor. And it seems to me that in those cases you're talking about, there was a sort of an administrative aspect to what the expert was doing. Isn't that correct? Yes, Your Honor. So... But the point I... Sorry. Excuse me. Go ahead. The point I draw from that is Dr. Flins did not have any cloak of authority from a court. He was not appointed. So he's entitled to less protection than a court-appointed psychologist in a similar circumstance. If even a court-appointed expert's immunity is subject to being forfeited, then certainly a hired gun expert, any immunity that he might have that's testimonial could be forfeited. And in that sense, I'm arguing with this word absolute that the trial court used. Even if there's some level of immunity that applies to Dr. Flins, it's pretty clear in the case law that it's not absolute. And it's not the same absolute immunity that applies to, for instance, the Supreme Court in the Briscoe versus LeHue case. That even though a police officer was lying, he still was entitled to immunity. And that's different, again, because that police officer was essential and integral to that case. Whereas Flins was not essential and integral to this case. So my argument is narrow. And I think it's simple, frankly, is that absolute immunity does not apply in this circumstance. And the trial court's application of absolute immunity is error. It must be reversed. There's probably, if it is reversed, we'll probably start all over again with what level of immunity might apply. And then delve into the facts of whether under these circumstances that immunity has been forfeited. It's akin to the qualified immunity that this court dealt with two cases ago. And that I know you see often in 1983 cases and things like that. So that's the best summary of my argument that I can give you. I'm happy to answer questions or I'm also happy to, I've got a short time here to save for rebuttal. Well, I'm a little interested in the jurisdictional question of there being $75,000 at issue. Sure. Did you ever argue or put forth any evidence or any suggestion that it does exceed $75,000? So I've thought a lot about this, Your Honor. And the answer is outside of the record. And I guess what I came down on my brief is I conceded that there's probably reasonable facts to assume that what was pled would exceed $75,000. But that definite answer is not contained within the record. The district court brought the matter up to respond to. Yes, Your Honor. Which is perfectly appropriate, but there's no party urging. I understand you can't confer jurisdiction on the court, but just to make sure everybody understands the procedural context. Yes, Your Honor. The district judge said that he determined that there was jurisdiction. Perhaps that's what you're talking about in the matter outside the record. But anyway, it's outside the record. Yes, Your Honor. And that's why there are layers to this. Ms. Moody was not aware that any communication was made about this jurisdictional amount. Come to find out there is an email that says essentially, yes, there's an inquiry to the court. And I want to be candid with you about that. But again, it's not in the record. And had she had an opportunity to weigh in on that, she might have said, no, I don't want to concede the jurisdictional amount because I'd rather be back in state court. But that's again, outside of the record. What are we supposed to do with it? What do you recommend we do with it? I think there's a case cited that the court can look to the complaint and make sort of a reasonable inference that at least $75,000 are in dispute. Do you think you can get that out of the complaint here? Yes, Your Honor. And alternatively, you could remand for the limited purpose of us putting that in the record. But that's why I'm not real strong on this is I think that would just sort of be a wasted step. You're saying it's not a legal certainty that that amount can't be recovered? Correct. Just from the face of the complaint? Correct. Is that your position? It's not a legal certainty. You know, it's a defamation claim, a libel claim and folded in for attorney's fees and court costs. So it's whatever a jury would award, I guess. All right. Thank you. Thank you, Your Honor. Thank you. Mr. Stepina, we'll hear from you next. Yes. May it please the court. To prevail here, Ms. Moody must show two things. First, that the Arkansas Supreme Court is likely to create a distinction between expert witnesses and other types of witnesses as far as immunity applies. And second, that an expert witness owes a duty at law to a party other than the party who retained the expert, the adverse party. Neither exists under Arkansas law or at common law. And I submit that the Arkansas Supreme Court is likely to find neither. And therefore, this court should affirm the district court's grant of summary judgment. As an initial matter, Ms. Moody conceded in her response to Dr. Flynn's motion for summary judgment that any case that was not initially pled when Ms. Moody brought her case first that was later dismissed was not commenced under Arkansas law. And therefore, the Arkansas savings statute does not apply to toll the statute of limitations to those claims. So any claim that was not brought in her first complaint that was later dismissed is not proper. Those claims in her first complaint, Ms. Moody brought claims for negligence, declaratory, and injunctive relief. Admittedly, Ms. Moody in her claim for declaratory injunctive relief asked the court to determine that the consultation report that Dr. Flynn's authored was false. And she made a general allegation that she incurred damages. But she made no specific allegation that she suffered reputational damages. That aside, I'd like to turn to witness immunity. Arkansas follows the general rule of cases, as the Arkansas Supreme Court set forth in the Johnson case, that witnesses are absolutely immune for statements they make in connection with a judicial proceeding. And Arkansas did not make any distinction between types of witnesses. And I am happy my friend on the other side mentioned the Supreme Court of the United States opinion in Briscoe. Because yes, the Supreme Court of the United States said that there is no distinction. The distinction for witness immunity applies to functional categories. But then it went on to say that there is no difference between how a police officer testifies as any other witness testifies. And what the court meant by that is that the functional category that those people were occupying at the time was the category of witness and not type of witness. There's not a distinction made by what role you serve as a witness, but that you are a witness. And so we would submit that under the Briscoe decision, which would be authority on the general common law that would apply. And as Arkansas bases its witness immunity on the general rule of American cases, that between functional categories, or there's no distinction between types of witnesses, only the category of witness, and therefore witnesses are entitled to immunity for their statements. Second, as far as the line of Arkansas cases that deal with court-appointed experts, and in these cases they were psychologists, we would submit that those cases are just not relevant here. That's a separate category of immunity. It's quasi-judicial immunity that's afforded to persons who are serving, who are cloaked in the authority of the court and serve some role that the court has delegated to them. And the Arkansas Supreme Court has said so long as you're acting within the court's appointment order and not acting outside, you're entitled to immunity because you are serving essentially part of the judicial function of the court. Something that the court is supervising or a question the court has to answer. Here, Dr. Flynn's was never appointed by a court order and this is not a quasi-judicial immunity case. And then turning to the scholarly articles that are referenced in the appellant's brief, the basis for permitting claims against expert witnesses, the thesis of those articles is that witness immunity should not prevent parties who retained the expert from maintaining a misconduct case against the expert because the expert's malpractice would have damaged them in the success of their case. Not that parties who did not retain the expert can somehow bring a claim against their opponent's expert. And so we would submit that, again, it's unlikely that the Arkansas Supreme Court is going to recognize a duty at law that expert witnesses owe to their adverse party. Along that same line, Ms. Moody is essentially asking this court, she's essentially bringing a professional misconduct claim against Dr. Flynn. If you look at the allegations in her complaint, she makes allegations that he did not follow what was required by the Arkansas State Board of Psychology. She makes allegations that he did not essentially fulfill his professional responsibilities. She makes allegations that he wasn't fair and impartial. And she makes allegations that he owed her such duty to be a fair and impartial expert witness. And we would submit there's no authority for any of those propositions. This is essentially a professional misconduct claim and a defamation claim brought against an opposing party's expert witness. And that is the purpose for witness immunity, is to prevent witnesses from facing these claims and being brought into fear for their testimony of having to defend a later lawsuit. And turning back to Briscoe, the Supreme Court in Briscoe determined that, yes, while there officers, there are other factors that weigh more heavily on police officers, that they are more likely to testify in cases, that the parties they testify against are more likely to be aggrieved by them. And we would submit that to the extent that policy factors don't favor extending witness immunity to expert witnesses, like police officers, there are those policy factors that weigh towards granting it. Expert witnesses testify more regularly. My friend on the other side referred to experts as hired guns. Parties are more likely to be aggrieved by their opponent's hired gun than a normal witness. So these additional policy factors that the court identified in Briscoe, we would submit also apply to expert witnesses as reasons to grant them immunity. But ultimately, we submit that this matter is controlled by Arkansas law. And controlling Arkansas law makes no distinction. And our opponent has put forth nothing that would allow this court to conclude that the Arkansas Supreme Court is likely to create such a distinction in its immunity jurisprudence. In conclusion, Ms. Moody asked this court to do two things that the Supreme Court of Arkansas is unlikely to do. Create a distinction between types of witnesses, as far as witness immunity's application, and to create a duty owed by expert witnesses to their party opponent. Because the Arkansas Supreme Court is unlikely to do either of these things, this court should affirm the district court's grant of summary judgment. And unless there are questions from this court, I will- How about the amount in controversy question? Yes, Your Honor. So there is jurisprudence from this court in Cobb v. Cobb that essentially says it's not the- the district court shouldn't prejudge the value of claims asserted by a plaintiff in determining a jurisdictional amount. And that stems from the fact that the plaintiff is the master of their complaint. And so the plaintiff sets forth the claims that they choose to. And so long as those claims, a fact finder could legally conclude that that amount is greater than the amount in controversy, it's not the judge's- the district court's responsibility to prejudge whether their claims have merit or not. And Ms. Moody brought a number of- I don't think the merit is at issue. I think it's whether there's- I mean, there's no, you know, no request for a certain amount of, you know, what do we have to establish that there's more than $75,000 at issue in the case? So Ms. Moody has asserted several unliquidated damage claims. And those claims can be aggregated. And when she does not request any specific amount, the defense must show by the preponderance of the evidence that the amount in controversy is satisfied. And the amount- the preponderance of the evidence standard is satisfied when the defendant can show that it is not a legal certainty that the plaintiff could not receive more than $75,000. So why don't you recite what the claims were, the nature of the claims? So Ms. Moody's complaint does not enumerate claims. But on our reading, we identified at least a negligence claim, a defamation claim, an intentional infliction of emotional distress, an outrage claim, potentially a, a medical injury claim, which she later admitted she never brought and intended to bring. But without her enumerating her causes of action, we were, we wanted to be sure we covered everything. And I see my time has remained, or gone. So unless this court has further questions. Would attorney's fees be at issue? She made requests for attorney's fees. I'm not sure on the basis, what her basis- Can that be counted as part of an amount in controversy? I believe under the jurisprudence, attorney's fees are included. Cost and interest is not. So cost and fees wouldn't be. But attorney's fees would be. Cost and interest would not be. Very well. Thank you for your argument. Mr. Collin, we'll hear a brief rebuttal. Thank you. I'll address two things briefly. Counsel suggested the Arkansas Supreme Court would have to adopt a distinction that expert witnesses are not entitled to the same immunity as percipient witnesses. And I submit they have adopted that distinction in Martin and Chambers and Fatak, all three of which involved expert witnesses, happened to be psychologists or psychiatrists, who were subject to liability when the facts showed that their immunity had been forfeited. So I think that's already happened. I acknowledge that those were appointed experts, but I think that Flynn's is in a weaker position by not being an appointed expert. An appointed expert at least has some cloak of judicial authority that justifies that immunity. A hired gun expert does not. It's not too much to expect experts to be cautious and careful and accurate with their opinions and subjecting them to liability encourages that, not discourages that. I read Briscoe a little bit differently. Granted, it applied immunity to a police officer's factual testimony, but only on the finding that he was integral or integral to the judicial process. And that's the point I've already made, that Dr. Flynn's was not integral to the judicial process here. Thank you, your honors. Thank you for your patience. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Thank you.